IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

KIEL T. GREENLEE,

        Plaintiff,

    v.

JUDGE THOMAS M HANNAH,
et al.,

        Defendants.

:

:    Case No. 3:14-cv-298

:    JUDGE WALTER H. RICE

:

---

DECISION AND ENTRY ADOPTING UNITED STATES MAGISTRATE
JUDGE'S REPORT AND RECOMMENDATIONS (DOC. #21);
OVERRULING PLAINTIFF'S OBJECTIONS THERETO (DOC. #22);
SUSTAINING MOTION TO DISMISS OF DEFENDANT CITY OF
KETTERING, OHIO (DOC. #11) AND MOTION TO DISMISS OF THE
HONORABLE THOMAS M. HANNA (DOC. #13); DISMISSING
COMPLAINT (DOC. #2) WITH PREJUDICE; JUDGMENT TO ENTER IN
FAVOR OF DEFENDANTS AND AGAINST PLAINTIFF; TERMINATION
ENTRY

---

After appearing in two separate court cases before The Honorable Thomas

M. Hanna[1] of the Kettering Municipal Court, *pro se* Plaintiff, Kiel T. Greenlee, filed

suit against Judge Hanna, in his official and individual capacities, and against the

City of Kettering, seeking monetary damages under 42 U.S.C. § 1983. Doc. #2.

The City and Judge Hanna each filed a motion to dismiss under Federal Rule of

Civil Procedure 12. Docs. ##11, 13.

---

[1]  Judge Hanna's name is misspelled in the case caption.

On May 7, 2015, United States Magistrate Judge Michael J. Newman issued a Report and Recommendations, Doc. #21, recommending that the Court sustain both motions, and terminate the case.  Plaintiff filed timely Objections to the Report and Recommendations, Doc. #22, and both Defendants filed responses, Docs. ##23, 24.

## I.    Background and Procedural History

As explained in the Report and Recommendations:

> Greenlee's claims stem from two Kettering Municipal Court cases. In the first case, Greenlee came before Judge Hanna on charges of speeding and improper display of license plates. At trial, Greenlee argued that the traffic stop occurred in West Carrollton, Ohio -- a location outside the jurisdiction of the Kettering Municipal Court. According to Greenlee, Judge Hanna ignored his argument on the ground that "a challenge of [j]urisdiction must be made pretrial," a finding that Greenlee argues is "in clear defiance of well[-]established precedence [sic] and Ohio Traffic Rule 11(B)(1)(b)."  Following trial, Judge Hanna found Greenlee guilty on both charges, and imposed fines totaling $175.00. Judge Hanna subsequently issued several bench warrants after Greenlee failed to pay the fine or appear before him. According to Greenlee, because Judge Hanna lacked jurisdiction over the underlying criminal charges, the judgments against him are void and the subsequent warrants "unlawful." Greenlee also claims that Judge Hanna failed to conduct hearings on his ability to pay the fines before issuing the warrants, pursuant to Ohio Rev. Code § 2947.14.

> Greenlee's second case before Judge Hanna involved a charge of disorderly conduct. Greenlee claims that, under the terms of a plea bargain, he received a fine of $250.00 and court costs.  According to Greenlee, Judge Hanna failed to inquire into his ability to pay the fine or conduct a hearing pursuant to Ohio Rev. Code § 2947.14. Judge Hanna then issued several allegedly unlawful warrants against Greenlee without conducting hearings pursuant to Ohio Rev. Code § 2947.14.

> In this § 1983 case, Greenlee claims that Judge Hanna violated his due process, equal protection, and Fourth Amendment rights, and demonstrated a "malicious intent" to jail him at "all costs." According to Greenlee, Kettering is also responsible for the alleged constitutional violations because of Judge Hanna's "position of final policy[-]making authority." Judge Hanna and Kettering now both move to dismiss the complaint pursuant to Fed. R. Civ. P. 12(b)(6) for failure to state a claim.

Doc. #21, PageID##100-01 (internal citations omitted).

Magistrate Judge Newman recommended that the Court grant both motions to dismiss. He concluded that the claims brought against Judge Hanna in his official capacity were barred by the Eleventh Amendment, and that those brought against Judge Hanna in his individual capacity were barred by the doctrine of absolute judicial immunity. *Id.* at PageID##102-05.

Magistrate Judge Newman also concluded that Plaintiff's claims against the City of Kettering should be dismissed, given that Plaintiff failed to identify any policy or custom of the City that was the moving force behind the alleged constitutional violations. He rejected Plaintiff's claim that Judge Hanna was a final policymaker for the City of Kettering. He held that the Kettering Municipal Court is not a division of the City of Kettering, but is, instead, an arm of the State of Ohio. Therefore, even if Judge Hanna were deemed a final policymaker for the Kettering Municipal Court, the City of Kettering could not be held liable. *Id.* at PageID##106-08.

3

Plaintiff filed timely Objections to the Report and Recommendations, raising three assignments of error.[2]  Doc. #22.  First, he argues that Magistrate Judge Newman's finding that the Eleventh Amendment bars the official capacity claims against Judge Hanna is contrary to the holding of *Alkire v. Irving*, 330 F.3d 802 (6th Cir. 2003). Second, he argues that Magistrate Judge Newman erred in finding that Judge Hanna is entitled to absolute judicial immunity on the claims brought against him in his individual capacity.  Third, he argues that Magistrate Judge Newman erred in finding no basis for imposing liability on the City of Kettering.

## II.    Standard of Review

Pursuant to 28 U.S.C. § 636(b)(1), this Court must make a *de novo* determination of those portions of the Report and Recommendations to which an objection is made.  The Court may accept, reject, or modify, in whole or in part, the magistrate judge's findings, may receive further evidence, or recommit the matter to the magistrate judge with instructions.  *Id.  See also* Fed. R. Civ. P. 72(b)(3).

—————————————————

[2]    Although Plaintiff indicates that there are only two assignments of error, there are actually three.

4

## III.    Discussion

### A.    Claims against Judge Hanna

Plaintiff seeks damages under 42 U.S.C. § 1983 against Judge Hanna in his official and individual capacities.  As the Supreme Court explained in *Kentucky v. Graham*, 473 U.S. 159, 165 (1985), whereas an individual-capacity suit seeks to impose personal liability on a government official for actions taken under color of state law, an official-capacity suit is the equivalent of an action against the governmental entity of which the officer is an agent.

#### 1. Official Capacity

Magistrate Judge Newman held that the Eleventh Amendment bars the claims brought against Judge Hanna in his official capacity, because the judge stands in the shoes of the Kettering Municipal Court, which is an arm of the state. Doc. #21, PageID#103.

Citing *Alkire v. Irving*, 330 F.3d 802 (6th Cir. 2003), Plaintiff maintains that this analysis is flawed.  At issue in *Alkire* was whether the Holmes County Court should be considered an "arm of the state" for purposes of Eleventh Amendment immunity.  The Sixth Circuit held that the most important factor to be considered is whether the state would be legally liable for a judgment against the court.  *Id.* at 811 (citing *Regents of the Univ. of Cal. v. Doe*, 519 U.S. 425, 430 (1997)).  Other factors may include: (1) "the status of the entity under state law"; (2) "the amount of control the state wields over the entity"; (3) "whether the agency can sue or be sued"; (4) "[w]hether the entity is immune from state taxation"; and (5) "whether

the entity is concerned with state-wide or local issues." *Id.* at 812-13.  Because

these issues were not briefed by the parties, the Sixth Circuit remanded the *Alkire*

case for further consideration of the sovereign immunity issue.  *Id.* at 813.

Plaintiff argues that a proper analysis of these factors leads to the

conclusion that the Kettering Municipal Court is *not* an arm of the state for

purposes of Eleventh Amendment immunity.  Most importantly, the City of

Kettering, and not the State of Ohio, would be legally liable for a judgment against

the Kettering Municipal Court.  Plaintiff notes that Ohio Revised Code § 1901.38

authorizes a municipality to procure liability insurance for judges and employees of

a municipal court.  He also correctly notes that the operating costs of a municipal

court are paid by the municipalities and townships within its territory, *see* Ohio

Rev. Code § 1901.026, and that municipal courts have geographically limited

subject matter jurisdiction, *see* Ohio Rev. Code § 1901.18.  Admittedly, under

*Alkire*, some of these factors could weigh against a finding of Eleventh

Amendment immunity.

Plaintiff maintains that there is no state statute or case law that

characterizes a municipal court as an arm of the state.  This is simply incorrect.

Most notably, in *Davis v. Jackson County Municipal Court*, 941 F. Supp.2d 870

(S.D. Ohio 2013), this court specifically held that an Ohio municipal court "is an

arm of the state for the purposes of Eleventh Amendment immunity," and that this

immunity extends to municipal court judges sued in their official capacity.  *Id.* at

878-79.

6

In *Davis*, the court noted that municipal courts are part of the state court system, created by the Ohio state legislature, and are subject to the supervision of the Ohio Supreme Court. *Id.* at 878. Moreover, a municipality has no authority to abolish the municipal court or to expand or restrict the court's jurisdiction. *Id.* The *Davis* court cited several cases holding that municipal courts in Ohio are arms of the state for purposes of the Eleventh Amendment, including *Lott v. Marietta Municipal Court,* 2:12–cv–1089, 2012 WL 6611615, at *1 (S.D. Ohio Dec. 19, 2012), *Wise v. Steubenville Municipal Court,* No. 2:08–cv–00577, 2008 WL 4849233, at *1 (S.D. Ohio Nov. 6, 2008), and *Sampson v. City of Xenia,* 108 F. Supp.2d 821, 840 (S.D. Ohio 1999). *Id.* at 878-79.

It also cited to *Pucci v. Nineteenth District Court*, 628 F.3d 752 (6th Cir. 2010), in which the Sixth Circuit held that, although the state-treasury inquiry is usually the most important factor in the sovereign immunity analysis, it is not the sole criterion. The other purpose of sovereign immunity is to "avoid the indignity of subjecting a State to the coercive process of judicial tribunals at the instance of private parties." *Id.* at 761 (quoting *Seminole Tribe v. Fla.*, 517 U.S. 44, 58 (1996)). This is "particularly relevant in a suit against a state court, which is the 'adjudicative voice' of the State itself." *Id.* at 764 (quoting *Barachkov v. 41B Dist. Court*, 311 F. App'x 863, 868 (6th Cir. 2009)).

Citing the role of the district courts within the Michigan state judiciary, the degree of supervision and control that the state has over them, the role of state actors in appointing and removing district court judges, and the traditional state

function that the district court carries out, the Sixth Circuit, in *Pucci*, concluded that, even though the State of Michigan would not be held liable for a judgment against the district court, the district court was nevertheless entitled to the protections of the Eleventh Amendment. *Id.* at 764.

Notably, Plaintiff has cited no mandatory authority in support of his argument that an Ohio municipal court is not an arm of the state for purposes of Eleventh Amendment immunity. In light of the cases cited above, the Court OVERRULES Plaintiff's Objection, and finds that Magistrate Judge Newman correctly held that Judge Hanna is entitled to Eleventh Amendment immunity on the claims brought against him in his official capacity.

### 2. Individual Capacity

Next, Plaintiff argues that Magistrate Judge Newman erred in holding that Judge Hanna was entitled to absolute judicial immunity on the claims brought against him in his individual capacity. Magistrate Judge Newman correctly noted that judges are typically immune from liability from civil suits for money damages unless the challenged actions are "not taken in the judge's judicial capacity," or are "taken in the complete absence of all jurisdiction." *Mireles v. Waco*, 502 U.S. 9, 11-12 (1991).

Plaintiff maintains that, having failed to hold an indigency hearing, Judge Hanna lacked statutory authority under Ohio Revised Code § 2947.14 to issue bench warrants for Plaintiff's failure to pay his fines or appear in court. Even assuming *arguendo* that Plaintiff is correct, this does not subject Judge Hanna to

8

personal liability.  As the Supreme Court noted in *Mireles*, "[i]f judicial immunity means anything, it means that a judge 'will not be deprived of immunity because the action he took was in error . . . or was in excess of his authority.'" 502 U.S. at 12-13 (quoting *Stump v. Sparkman*, 435 U.S. 349, 356 (1978)).

Plaintiff also argues that, because his traffic stop occurred outside of the territorial jurisdiction of the Kettering Municipal Court, Judge Hanna acted in the complete absence of all jurisdiction.  As Magistrate Judge Newman noted, a similar argument was rejected in *Rose v. Village of Peninsula*, 839 F. Supp. 517, 527-28 (N.D. Ohio 1993).  In that case, the traffic citation at issue indicated the particular intersection at which the driver was stopped.  Although that intersection was, in fact, slightly outside the territorial jurisdiction of the mayor's court, the district court concluded that it was not unreasonable for the judge of the mayor's court to conclude, as a factual matter, that the alleged traffic violation occurred within his jurisdiction.  Accordingly, the district court held that it could not be said that the judge had acted in the complete absence of jurisdiction for purposes of absolute judicial immunity.  *Id.*

The instant case is even more compelling.  Plaintiff maintains that the traffic stop occurred near mile marker 47 on Interstate 75 in West Carrollton, which is under the jurisdiction of the Miamisburg Municipal Court.  The citation, however, expressly stated that the traffic stop occurred in the City of Moraine, which is indisputably within the territorial jurisdiction of the Kettering Municipal Court. Certainly, Judge Hanna cannot be faulted for taking the citation at its face value;

9

he would not be expected to independently verify that the particular mile marker listed was, in fact, in the City of Moraine. Under these circumstances, it cannot be said Judge Hanna acted in the complete absence of all jurisdiction.

For these reasons, the Court OVERRULES Plaintiff's Objections to Magistrate Judge Newman's finding that Judge Hanna is entitled to absolute judicial immunity on the claims brought against him in his individual capacity.

### B. Claims against City of Kettering

Finally, Plaintiff objects to Magistrate Judge Newman's recommendation that all claims against the City of Kettering be dismissed. The magistrate judge found that Plaintiff had failed to identify a policy or custom—adopted or sanctioned by the City—that was the moving force behind the alleged constitutional violations, *See Monell v. New York City Department of Social Services*, 436 U.S. 658 (1978). He noted that the Kettering Municipal Court is distinct from the City of Kettering, and rejected Plaintiff's argument that Judge Hanna is a final policymaker for the City of Kettering.

In his Objections, again citing *Alkire v. Irving*, 330 F.3d 802 (6th Cir. 2003), Plaintiff now argues, for the first time, that the City could be held liable under § 1983 because the City's Police Chief has a custom or policy of never questioning the legality of the arrest warrants issued by the Kettering Municipal Court in connection with a failure to pay a fine. However, because this argument was never presented to the magistrate judge, the Court need not consider it. *See Murr v. United States*, 200 F.3d 895, 902 n.1 (6th Cir. 2000) (noting that issues raised

10

for the first time in objections to a magistrate judge's report and recommendations are deemed waived).  Plaintiff's Objection is OVERRULED on this basis.

Besides, Magistrate Judge Newman properly concluded that Plaintiff failed to state a viable claim against the City of Kettering.  *See Sampson v. City of Xenia*, 108 F. Supp.2d 821, 839-40 (S.D. Ohio 1999) (holding that, because Ohio's municipal courts are not subject to the control of local municipalities, the City of Xenia could not be held liable for any allegedly unconstitutional policy or custom of the Xenia Municipal Court).

## IV.    Conclusion

Based on the reasoning and citations of authority set forth in United States Magistrate Judge Michael J. Newman's Report and Recommendations, Doc. #21, as well as on a thorough *de novo* review of this Court's file and the applicable law, the Court ADOPTS said judicial filing in its entirety, OVERRULES Plaintiff's Objections thereto, Doc. #22, and SUSTAINS Defendants' Motions to Dismiss, Docs. ##11, 13.  Plaintiff's Complaint, Doc. #2, is DISMISSED WITH PREJUDICE. Judgment shall be entered in favor of Defendants and against Plaintiff.

The captioned case is hereby ordered terminated upon the docket records of the United States District Court for the Southern District of Ohio, Western Division, at Dayton.

11

Date: September 17, 2015

WALTER H. RICE
UNITED STATES DISTRICT JUDGE